UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Sheryl Serreze Desrosiers,<br><br>Plaintiff,<br>v.<br><br>Hartford Life and Accident Insurance Company, a Connecticut corporation,<br><br>Defendant, | Civil Action No. 03-018-L |

# Plaintiff's Reply Memorandum In Support Of Motion For Summary Judgment And In Opposition To Defendant's Cross Motion For Summary Judgment

## I. Introduction

The principal problem with defendant Hartford Life and Accident Insurance Company's opposition brief (doubling as its memorandum in support of its cross summary judgment motion) is its absolute failure to discuss any aspect of plaintiff Sheryl Serreze Desrosiers's former job, and exactly how she could have performed it with the physical conditions that she endured when her disability claim was filed. This problem, though glaring, is not unexpected. Hartford had no information (because it never asked for it) as to the duties of an Assistant U.S. Trustee when it denied her claim, and showed no interest (and never discussed) the description Desrosiers gave to it during the pendency of her appeal. And that presents a serious problem for Hartford: How could it deny Desrosiers's claim that she could not perform the essential duties of her occupation when it had no clue what those were?

Hartford's approach here was unreasonable. It violated its own internal manuals when it denied Desrosiers's benefit claim with no information as to her job duties. The Court should find that Desrosiers was totally disabled within the meaning of Hartford's policy and order Hartford to pay her disability benefits, with interest, in accord with her policy rights.

## II. Argument

### A. Desrosiers's Cited Caselaw Concerning The Legal Standard Is Relevant

In a footnote, Hartford seeks to dismiss as "not relevant" federal cases (mostly appellate cases with a single case from the District of Maryland) cited by Desrosiers that discuss the relevant standard this Court should apply in analyzing Hartford's decision to deny disability benefits. Hartford's response is surprising – the caselaw cited by Desrosiers is not controversial – and incorrect.

ERISA, of course, is a federal statute, and plans that are subject to its regulations "must be interpreted under principles of federal common law."[1] As such, "federal law is presumed to be uniform."[2] Accordingly, where cases from other circuits address the relevant standard here, it is not just appropriate but sensible to consider them. Thus, it cannot be doubted that "deferential review is not no review .... [D]eference need not be abject" in both the Seventh Circuit (which authored that language[3]) and in the First Circuit.

---

[1] *E.g., Filiatrault v. Comverse Technology, Inc.*, 275 F.3d 131, 135 (1st Cir. 2001).
[2] *In re Singleton,* 269 B.R. 270, 273 (Bankr. D.R.I. 2001)(citing *E.E.O.C. v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999)(brackets eliminated)).
[3] *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)(internal quote marks and citation omitted).

To the extent that Hartford feels more comfortable with a formulation that arises closer to home, it is readily available. In *Corsini v. United HealthCare Services,*[4] Judge Torres analyzed a plan enforcement claim against the same deferential standard that Hartford urges here. Judge Torres observed that the defendant HMO was financially responsible for the benefits at issue, a conflict that did not warrant changing the standard of review. Nevertheless, "it must be weighed as a factor in determining whether there is an abuse of discretion."[5] Concluded Judge Torres: "The standard to be applied in such cases is one of 'reasonableness.' "[6]

Hartford is subject to no less searching a review than United HealthCare. The fact that it is financially responsible for the disability claims at issue does not change the applicable standard of review, but is appropriately considered in assessing whether Hartford's denial was reasonable.

**B. <u>There Is No Evidence Hartford Considered Desrosiers's Job Description</u>**

In her opening brief, Desrosiers demonstrated that Hartford – despite express instructions from its internal manual that a claimant's job description be obtained and considered – had no information describing Desrosiers's job when it denied her disability claim. Hartford cleverly confuses the issue in its response brief, which requires this brief recap.

On August 11, 2000, Hartford denied Desrosiers's disability claim.[7] Three months later, and then only at the instigation of Desrosiers's attorney, Hartford received

---

[4] 145 F. Supp.2d 184 (D.R.I. 2001).
[5] *Id.* at 189-90 (quoting *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)(internal quote marks omitted)).
[6] *Id.* (quoting *Doe v. Travelers Insurance Co.* 167 F.3d 53, 57 (1st Cir. 1999)).
[7] Hartford Statement of Undisputed Facts, ¶ 30.

Desrosiers's job description.[8] Thus, despite the express requirement of Hartford's internal manual, *the job description could not have been considered by Hartford when it denied her disability claim.*

True enough, Hartford had the job description – and even referenced it in a single line – when it denied Desrosiers's subsequent appeal of the benefit denial. But nothing in the record suggests that Hartford actually considered its substance, or that it was passed along to the decision-maker, Dr. Lyon. The language of the appeal denial letter repeats nearly verbatim the original denial letter, and continues to characterize Desrosiers's job as "sedentary,"[9] a descriptor that cannot be squared with the job description then in Hartford's possession.

## C. <u>Hartford's Newly-Found "Partial Disability" Argument Is Meritless</u>

For the first time in the many years in which these parties have sparred, Hartford argues that the fact that Dr. Sammaritano permitted Desrosiers to return to work *with significant limitations,* in and of itself, defeats Desrosiers's claim for coverage. The argument is meritless, for the following three reasons.

- First, the limitations Dr. Sammaritano imposed made it impossible for Desrosiers to work at all.
- Second, the cases upon which Hartford relies (and at best intimates such a result) involved a completely different definition of "total disability,"[10] or otherwise interprets the Massachusetts handicap discrimination statute[11] or

---

[8] **Lewis Aff., Tab 2, at bate stamp H0227-30.**
[9] ***Id.* at H0065.**
[10] *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 185 (1st Cir. 1998)(totally disabled means being "completely prevented from engaging in ***any*** occupation ...")(emphasis supplied); *Marecek v. BellSouth Telecommunications, Inc.*, 49 F.3d 702, 705 (11th Cir. 1995)("The plan does not specify whether the claimant must be totally disabled and unable to work or whether the benefits accrue for a claimant that is partially disabled...").
[11] *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir. 1992).

the Massachusetts workers compensation statute.[12] It is, to be generous, safe to say these cases are far removed from the language at issue here.

- Third, the argument comes too late. The colorfully-named "mend the hold" doctrine (a name derived from competitive wrestling) applies. The doctrine "is a 'corollary of the duty of good faith' in contracts and has been applied to limit the right of a contractual party to change its litigation position – for example, insurance companies that change their reason for refusing to play a claim.' "[13] This is a new argument, and it comes unfairly too late.

In fact, Hartford's policy separately defines, and separately covers, partial disability. In conformity with Hartford's request,[14] should the Court find Desrosiers totally disabled, the claim should be remanded for Hartford to consider when and if her total disability coverage terminated and she became partially disabled (and still entitled to coverage.)

## D. <u>Dr. Sammaritano Comprehensively Evaluated Desrosiers</u>

Hartford criticizes Desrosiers for focusing on Dr. Sammaritano's analysis (Hartford calls it "trumpeting"[15]). Dr. Sammaritano's analysis – derived from actually treating Desrosiers – is no doubt inconvenient to Hartford. But it is nevertheless the best, and most reliable, evidence *in Hartford's record* that actually discusses Desrosiers.

Only Dr. Sammaritano took a look at *all* of Desrosiers's conditions and ailments and makes sense out of them. Only Dr. Sammaritano reconciled the various findings by the various physicians. Only Dr. Sammaritano viewed Desrosiers as the sum of her parts. And only Dr. Sammaritano considered the multitude of physical ailments suffered by

[12] *Case of Simari,* 11 Mass. App. Ct. 904, 414 N.E.2d 629 (1981).
[13] *Prudential Ins. Co. of America v. Evergreen Oak Electric Supply and Sales Co. Employee Benefit Plan,* 1996 WL 18970, *4 (N.D. Ill. Jan. 18, 1996)(quoting *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 363 (7th Cir. 1990)(internal quote marks omitted)).
[14] Hartford 3/03/06 Br. at 3 n.1.
[15] Hartford 3/03/06 Br. at 2.

Desrosiers and applied *all of them* against Hartford's "own occupation" disability coverage.

This is not to fault the other doctors who saw Desrosiers on a single visit referral basis. They were not asked to look at the quantum of Desrosiers ailments and consider whether, in aggregate, they rendered her totally disabled within the meaning of Hartford's policy. That was outside their scope of engagement.

This is, however, to fault Hartford, and more specifically Dr. Lyon. Throughout his review (and repeated in Hartford's opening brief), Hartford (mostly through Dr. Lyon) has ignored, devalued, isolated and minimized any finding favorable to Desrosiers. "Such a decision to 'ignore, isolate and narrowly interpret the medical findings favorable to [plaintiff]' is unreasonable."[16]

Evidence of the unfair narrowness of Hartford's approach is found, front and center, in its opening brief.

***1. Desrosiers's leg problems***

Hartford takes two swipes at Desrosiers in this discussion, arguing first that there is no evidence (presumably it means objective) of injury and second that there is no evidenced that such injury kept her from walking. Its approach reveals much.

First, there was objective evidence of physical trauma,, which included a disc bulge in her spine,[17] unsteady tandem walk,[18] along with the subjective complaints of pain. *In addition,* Dr. Sammaritano explained certain findings now seized upon by Hartford. For example, the giveaway weakness in her left leg that, one physician claimed,

[16] *Fordyce v. Life Ins. Co. of North America,* 340 F. Supp.2d 994, 1005 (D. Minn. 2004)(quoting *Williamson v. A.T. Massey Coal Co., Inc.,* 56 F. Supp.2d 656, 660 (S.D.W. Va. 1998))(brackets in original)).

[17] **Lewis Affidavit, Tab 2, at bate stamp H0122.**

[18] ***Id.* at H0120.**

was not clearly pathologic "is frequently seen in patients with intense pain in their back. On strength testing in these patients, they may be unable to continue with the testing due to the pain and appear to 'give away.' "[19] Hartford claims in its brief that Dr. Lyon concluded that Dr. Sammaritano was wrong "and he set forth a list of objective test results supporting his conclusion."[20] Below is Dr. Lyon's *entire* analysis of Dr. Sammaritano. It amounts to little more than a hunch:

> It is my opinion that Dr. Sammaritano's opinions on Ms. Serreze are not based on the objective and logical findings. Hospital records in December of 1999, from Rhode Island Hospital, provide evidence suggesting nonphysiciologic neurologic findings and the possibility of a conversion disorder or malingering.[21]

The quality of that analysis is made worse by the weight Hartford places on its claim that supposedly Desrosiers was seen walking in the hospital room two days after admission. But the issue for coverage is not whether she could walk for short distances in short intervals. The issue was whether she could continue her job as an 8-hour plus a day United States Assistant Trustee. These are entirely different questions, and though the distinction is unrecognized by Hartford – even through its opening brief – it was understood by Dr. Sammaritano, whose counsel was never recognized by Dr. Lyon:

> The fact that she could move around the room without a cane for a short period shows nothing about the long term effects of walking without some kind of support.[22]

---

[19] ***Id.* at H0124.**
[20] Hartford 3/03/06 Br. at 21.
[21] **Lewis Aff. at Tab 2, bate stamp number H0089.**
[22] ***Id.* at H0124.**

### 2. *Desrosiers's vision problems*

Hartford's discussion of Desrosiers's eye problems is similarly one-sided. Conceding some injury, Hartford nevertheless announces "[n]o physician ever stated that plaintiff's eye problem rendered her unable to work." That is false. "[H]er sensory visual skills are impaired," wrote Dr. Sokol. "Visually evoked potentials are abnormal in her left eye and consistent with her visual field defect. In addition to a field defect, it is also likely that she has poor depth perception. … In my opinion, her VEPs are moderately abnormal and in conjunction with her field defects could interfere with her ability to carry out the duties and responsibilities of her law practice and may have contributed to her subsequent accidents."[23] Dr. Hedges finding is consistent, concluding that Desrosiers had an irregular left hemianopic defect.[24]

### 3. *Desrosiers's cognitive issues*

Hartford pins much on the report of two physicians it hired, Drs. Brooks and Cohen, from which it reports that they concluded that Desrosiers "was not disabled."[25] The actual evaluation is far more complex:

> Notably, Ms. Serreze exhibits a significant clinical profile on the MMPI-2, strongly suggesting a somatatization disorder and/or conversion symptoms. It is likely that under conditions of stress, or in response to physical trauma, Ms. Serreze experiences psychophysiological symptoms and somatic preoccupation. This tendency may lead to an amplification of symptoms associated with existing medical conditions or physical discomfort.
>
> In summary, from a neurocognitive performance standpoint, Ms. Serreze appears to be functioning well enough to perform her professional duties perhaps even on a full time basis, ***if the migraines and her reported fatigue can be properly managed.***

---

[23] **Lewis Aff., Tab 2, at bate stamp number H0127-28.**
[24] ***Id.* at H0384.**
[25] Hartford 3/03/06 Br. at 23.

> However, we are not offering an opinion about the impact of fatigue and migraines on her ability to work.[26]

In the same discussion, Hartford somehow fails to account for Dr. Sokol's analysis on the same general issue: "Mrs. Serreze's verbal memory is impaired. Her ability to learn a list of 16 words presented 5 times was normal. However, after a 30-minute delay her recall of the words was impaired. Her performance did not improve on a recognition task."[27] This analysis was consistent with Dr. Sammaritano's testing, in which she found mild short term memory deficit.[28]

In short, Desrosiers correctly focused on Dr. Sammaritano's analysis, as she is the only physician to put together a single comprehensive view of her ailments. It was Hartford, not Desrosiers, that gerrymandered the record to fit its argument. But parsed carefully, the record comes nowhere close to supporting the reasonableness of Hartford's benefit denial.

**E. <u>Desrosiers's Ability To Work Full Time Was Always The Issue</u>**

The unfair narrowness of Hartford's analysis is demonstrated by its argument that Desrosiers's stamina was never put in issue by her claim for total disability.[29] That statement is false. Total disability coverage is implicated when an insured is prevented "from performing the essential duties of [her] occupation."[30] For Desrosiers, whose "essential duties" were required (at least) five days a week, and (at least) eight hours a day. Hartford apparently takes the view that if Desrosiers can work for a fraction of that

---

[26] **Lewis Aff., Tab 2, at bate stamp number H0265.**
[27] ***Id.* at bate stamp H0126.**
[28] ***Id.* at H0120.**
[29] Hartford 3/03/06 Br. at 26.
[30] **Lewis Aff., Tab 1, policy page 9.**

time, then she is not totally disabled. In other words, total disability has both a qualitative and a quantitative component.

This point was well – and colorfully – explained by the Seventh Circuit in *McFarland v. General American Life Ins. Co.*[31]

> A qualitative reduction would be one like that proposed by General American's baseball analogy. In that example, the first shortstop was no longer able to perform one core and essential aspect of his job (throwing) as a result of an injury. This disability, while affecting only one of several core skills, would be enough to prevent him from continuing to perform as a shortstop. … [A] person would reasonably expect that, if he was no longer able to perform an essential duty of his position, he would be totally disabled.[32]

That describes the *qualitative* reduction that triggers total disability coverage. But there is a second type of reduction that also triggers total disability coverage:

> In contrast with an injury or sickness resulting in a qualitative performance reduction, a quantitative reduction would be one in which the injury or sickness would not physically prevent an employee from performing any given task, but the injury instead renders the person unable to perform for a long enough period to continue working at his regular occupation. Therefore, although the person is still able to perform the actual tasks themselves, the person is reduced perhaps to 25% of the prior output. We think it possible that a reasonable interpretation of the policy language would indicate that a person whose quantitative performance was greatly reduced would also no longer be able to perform the "material and substantial" duties of his occupation.[33]

Hartford virtually concedes that it never considered Desrosiers's claim against this quantitative reduction, but attempts to explain this away by suggesting that was Desrosiers's obligation. But nothing in Hartford's policy imposes this type of

---

[31] 149 F.3d 583 (7th Cir. 1998).
[32] *Id.* at 588.
[33] *Id.*

requirement on its insureds. By contract, Desrosiers was obliged to submit a proof of loss, which she supplemented (well above what her contract required). It was *Hartford's obligation* to test these physical ailments against both the quantitative and qualitative components of its total disability coverage.

### F. <u>Hartford Required Objective Evidence Of Desrosiers's Physical Ailments</u>

In response to Desrosiers's observation that Hartford demanded proof of objective evidence even though the policy itself has no such requirement, Hartford backpedals, conceding that objective evidence of ailments that do not lend themselves to objective clinical findings is improper. "Instead … Hartford looked for objective evidence that they impaired plaintiff's ability to work."[34]

That unsubstantiated claim is after-the-fact sandpapering, pure and simple. Hartford did not even have Desrosiers's job description until *after* it denied the claim, in part, because (it said) there was no objective evidence of her ailments.

## III. Conclusion

Hartford, which – as an ERISA fiduciary – owes special obligations to Desrosiers even now, has advanced a crabbed, narrow and ultimately unfair distillation of the facts to try to support its flawed decision to deny disability benefits to Desrosiers. The Court should find that Desrosiers satisfied all of Hartford's policy requirements, and order Hartford to make good on its contractual promise to cover for disability.

---

[34] Hartford 3/03/06 Br. at 27.

Dated: 3/20/06

Respectfully submitted:

By: 

Christopher M. Lefebvre
**LAW OFFICES OF CLAUDE LEFEBVRE & SONS**
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
B.B.O. #629056

-and-

Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER, DUFFY & FOSTER, P.A.**
1845 Walnut Street
24th Floor
Philadelphia, PA 19103
(215) 814-9322

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Sheryl Serreze Desrosiers,

Civil Action No. 03-018-L

Plaintiff,

v.

Hartford Life and Accident Insurance Company, a Connecticut Corporation,

Defendant.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of March, 2006 a copy of the attached Plaintiff's Memorandum of Law in Opposition of Defendant's Motion For Summary Judgment and consolidated Reply in Support of Plaintiff's previously filed Motion For Summary Judgment was hand delivered to the following:

Mark Pogue, Esq.
Edwards & Angell
1 Financial Plaza Suite 2700
Providence, RI 02903

_______________________

S:\WPFILES\Consumer NON BK Cases\Desrosiers v. Hartford\Cert of Service for Memo in Suppor of Motion to Compel.wpd