UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHERYL SERREZE DESROSIERS, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 03-018-L |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut Corporation, | : | |
| Defendant. | : | |

**DEFENDANT'S SUR-REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff's reply memorandum fails to address Hartford's showing that its decision to deny disability benefits was reasoned and supported by substantial medical evidence. Plaintiff instead presents a hodgepodge of brief discussions focused mainly on subsidiary issues. None of these arguments is persuasive. As a result, Hartford's motion for summary judgment should be granted.

**I. The Deferential Standard of Review Should Not Be Altered Because Of Hartford's Dual Role**

Plaintiff notes that Hartford is not only plaintiff's claim administrator, but also is "financially responsible for the disability claims at issue."[1] According to plaintiff, the fact that Hartford functioned in both roles means that Hartford's decision should be judged not by the

[1] Plaintiff's Reply Memorandum In Support Of Motion For Summary Judgment And In Opposition To Defendant's Cross Motion For Summary Judgment ("Pl. Reply") at 3.

arbitrary and capricious standard, but by a standard of "reasonableness." Id., citing Corsini v. United Health Care Services, 145 F.Supp.2d 184 (D.R.I. 2001).

This statement is not correct. In the First Circuit, the mere fact that a claim administrator is also responsible for paying eligible claimants does not alter the standard of review. As the First Circuit explained last year:

> Under the law of this Circuit, the fact that the plan administrator will have to pay the plaintiff's claim out of its own assets does not change the arbitrary and capricious standard of review.

J. M. Wright v. R.R. Donnelley & Sons Group Benefits Plan, 402 F.3d 67, 75 (1st Cir. 2005) (quotation marks and brackets omitted), quoting Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125-26 (1st Cir. 2003). The Wright court went on to note that, although courts in other circuits have recognized a technical conflict of interest when the insurer of an ERISA plan also serves as the administrator, that is not the law in the First Circuit. Id. at 75, n.5.[2]

In the case at bar, therefore, even though Hartford functioned both as claim administrator and insurer, the question before this Court is not "whether Hartford's denial was reasonable." Pl. Reply at 3. Wright makes clear that judicial review under the arbitrary and capricious standard is far more deferential to the administrator:

> Under this standard, as the First Circuit stated last year, a decision to deny benefits to a beneficiary will be upheld if the administrator's decision was reasoned and supported by substantial evidence. Evidence is substantial when it is reasonably sufficient to support a conclusion. Evidence contrary to an administrator's decision does not make the decision reasonable, provided substantial evidence supports the decision.

Wright, 402 F.3d at 74 (citations and quotation marks omitted).

---

[2] The fact that the First Circuit's position on this issue differs from that taken by other courts illustrates why plaintiff's persistent reliance on cases from other circuits is improper.

In sum, so long as Hartford's decision was (i) reasoned and (ii) supported by substantial evidence, it must be upheld.

## II. Plaintiff's Job Description

Plaintiff's second point focuses on her job description. She presents her argument in the form of a question: "How could [Hartford] deny Desrosiers's claim that she could not perform the essential duties of her occupation when it had no clue what those were?" Pl. Reply at 1. Later, plaintiff acknowledges that Hartford did in fact have her job description at the time it denied her appeal. Id. at 4.

Plaintiff seems to have three complaints. First, she is concerned that Hartford did not have her job description in its possession when it initially denied her claim in 2000. Pl. Reply at 4; see A. 67-72. Second, she contends that, after Hartford received the job description during the appeal period, "nothing in the record suggests that Hartford actually considered its substance." Id. Third, she disputes Hartford's characterization of her job as "sedentary." Id.

### A. Plaintiff's Delay In Providing The Job Description

Because Hartford obtained the job description before plaintiff's administrative appeal was resolved in 2001, it is not clear why it matters that Hartford did not have the job description when it initially denied her claim in 2000. In any event, plaintiff's complaint is baseless. The panel in Wright considered and rejected virtually the same complaint that plaintiff advances here. In Wright, as in this case, Hartford initially denied the claimant's disability application without benefit of a job description; then obtained the description during the course of the claimant's appeal; and ultimately denied that appeal. See 402 F.3d at 72. In court, the claimant in Wright complained that "Hartford's failure to obtain a copy of his job description before [initially] denying benefits on November 29, 2001 evidences Hartford's bad faith." Id. at 77.

The First Circuit rejected this argument. In so doing, the court made clear that it is the burden of the claimant to provide a job description to her insurer:

> It was Wright's burden to provide evidence that he was unable to perform the duties of his occupation. See Boardman, 337 F.3d at 16. An integral part of that evidence would be a statement of what his job required. Wright never submitted such a statement.

Wright, supra at 77 (citing Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9 (1st Cir. 2003).

Here, as in Wright, the fact that Hartford did not have a copy of plaintiff's job description when it initially denied her claim does not provide grounds for criticizing Hartford's handling of her claim. It was the plaintiff's burden to provide that description to Hartford.[3]

**B. Hartford's Consideration of the Job Description**

Plaintiff's complaint that "nothing in the record suggests that Hartford actually considered [the job description's] substance," Pl. Reply at 4, is simply wrong. The record reflects explicitly that Hartford considered the job description in the course of denying plaintiff's appeal. See A. 62 (item 7)

**C. Hartford's Characterization of Plaintiff's Work as "Sedentary"**

Finally, plaintiff asserts that Hartford's description of her job as "sedentary" is " a descriptor that cannot be squared with the job description then in Hartford's possession." Pl. Mem. at 4. But plaintiff fails to develop this argument. She does not explain why the job description shows that her job was not sedentary, and she does not explain the legal consequences of Hartford's alleged mistake in viewing her work as sedentary.

In fact, plaintiff's job description does indeed reflect that her work was sedentary. A widely accepted definition of "sedentary" appears in the Dictionary Of Occupational Titles (the

---

[3] The fact that Hartford's internal claims handling manual urges examiners to obtain a copy of a claimant's job description, of course, did not as a legal matter relieve plaintiff of this responsibility.

"DOT"), which is published by the United States Department of Labor. As the First Circuit has noted:

> The Dictionary of Occupation Titles contains the following definition of Sedentary Work:
>
> Sedentary Work – Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Lopes v. Metropolitan Life Insurance Company, 331 F.3d 1, 3 n.2 (1st Cir. 2003).[4] Application of this definition of "sedentary" to the job description provided by plaintiff confirms that her work was sedentary. Virtually every activity listed in plaintiff's job description – including document review, document preparation, legal research, office management/administrative, trustee review, and criminal referrals – is performed while sitting. A. 230. There is no indication that plaintiff's job involved any lifting, carrying, pushing or pulling. Id. There is no indication that her job involved any court appearances or travel, which would require standing. Id. The description is clear that plaintiff's work required walking or standing only occasionally – the hallmark of sedentary work.

Moreover, the DOT itself characterizes the work of an attorney as sedentary. See Dictionary of Occupation Titles, 4th ed. (1991), section 110.107-010 ("LAWYER").

[4] The First Circuit's judicial notice of the DOT in Lopes is consistent with other courts' reliance on that publication. For example, the Third Circuit Court of Appeals has stated that "the DOT is a recognized authority in the vocational industry." Lasser v. Reliance Standard Life Insurance Company, 344 F.3d 381, 395 (3d Cir. 2003). Accord, McCready v. Standard Insurance Company, 2006 WL 490606 (D.Md. March 1, 2006) ("[T]he D.O.T. is widely and routinely used to define "occupation" in the U.S. economy . . . Given the amount of research and analysis that has gone into grouping similar jobs and defining the occupational titles, and the length of time the D.O.T. has been widely used, it is reasonable for plan administrators, and courts, to use…") (quoting Dionida v. Reliance Standard Life Ins. Co., 50 F.Supp.2d 934, 939 n.4 (N.D. Cal. 1999)).

In short, plaintiff's job description makes clear that Hartford correctly viewed her work as sedentary. In any event, plaintiff presents no argument to the contrary.

### III. Plaintiff's Capacity For Part-Time Work Defeats Her Claim For Total Disability

In its opening brief Hartford demonstrated that its decision to deny benefits must be upheld because the decision was reasoned and supported by substantial evidence. In a footnote, Hartford noted an entirely independent reason why plaintiff is not entitled to benefits: her own doctor (Sammaritano) cleared her to return to work, with certain conditions, on a part-time basis. Plaintiff's ability to work on a part-time basis is significant because the First Circuit has "impl[ied] that total disability means inability to work either part-time or full-time." Doyle v. Paul Revere Life Insurance Company, 144 F.3d 181, 186 (1st Cir. 1998), citing August v. Offices Unlimited, Inc., 981 F.2d 576, 582 (1st Cir. 1992).

Plaintiff complains that Hartford's assertion of this argument is untimely, and represents a change in its litigation position. Pl. Reply at 5. That is not so. Hartford's position throughout this litigation has been the same: that plaintiff is not totally disabled. The fact that Dr. Sammaritano permitted plaintiff to work on a part-time basis is simply another reason why plaintiff cannot be totally disabled. Moreover, given plaintiff's heavy reliance in her opening brief on Dr. Sammaritano's writings, Hartford was surely permitted in its opposition brief to express its own view of the significance of Dr. Sammaritano's comments.

Plaintiff points out that the First Circuit cases cited in support of Hartford's argument involved slightly different definitions of total disability. Pl. Reply at 4-5. That is beside the point. The issue is whether a person who can work part-time can be considered totally disabled



PRV_796441_1/MPOGUE

under any definition.[5] Doyle and the cases it cites make clear that, wholly apart from the mountain of medical evidence supporting Hartford's decision to deny disability benefits, plaintiff's ability to work part-time defeats her claim that she is totally disabled.

## IV. It Is Not The Court's Function To Decide How Much Weight To Place On Dr. Sammaritano's Comments

Plaintiff urges the Court to accept Dr. Sammaritano's comments because, in her view, they are the "best, and most reliable," medical evidence in the record. Pl. Reply at 5.

This argument reflects a misunderstanding of the Court's function. As Hartford pointed out at pages 17-19 of its opening brief, in an ERISA case it is not the Court's job to determine which medical evidence is the "best" or "most reliable." Instead, the court "must determine not which side we believe is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor." Matias-Correa v. Pfizer, Inc., 345 F.3d 7.12 (1st Cir. 2003) (citation omitted). Plaintiff's reply memorandum nowhere rebuts -- or even addresses -- the fact that a substantial body of medical evidence supported Hartford's decision to deny benefits. This is fatal to plaintiff's position.

## V. Plaintiff's Discussion Of Her Specific Complaints Does Not Demonstrate That She Is Totally Disabled

Plaintiff's reply brief devotes approximately one page each to a discussion of her three reported ailments. These discussions do not come close to demonstrating that Hartford's decision to deny benefits was arbitrary and capricious.

[5] Note that, in summarizing the cases in which courts have held that the ability to work part time precludes total disability, the Doyle court attached no significance to the definitional differences in the policies at issue.

### A. Plaintiff's Reported Leg Problem

Relying exclusively on the comments of Dr. Sammaritano, plaintiff argues that "there was objective evidence of physical trauma" associated with her leg. Pl. Mem. at 6.[6] She goes on to argue that Dr. Sammaritano raised "questions" about whether plaintiff's leg problems would permit her to work "an 8-hour plus day." Id. at 7.

There are three problems with this argument. First, the fact that there was "evidence of physical trauma" or "questions" about the strength of plaintiff's left leg hardly means that this purported injury was disabling. As Hartford pointed out in its opening brief, no doctor – not even Dr. Sammaritano – ever stated that plaintiff's leg injury was disabling.

Second, plaintiff's job description makes clear that the great majority of her work was performed while sitting. It is a large overstatement for plaintiff to suggest that she was on her feet for "an 8-hour plus day."

Finally, plaintiff again fails to address the fact that there is a substantial body of evidence supporting Hartford's position that plaintiff's leg ailment was not disabling. That is enough to support Hartford's denial of benefits.

### B. Plaintiff's Reported Vision Problems

In her opening brief plaintiff omitted any mention of her reported eye problem. In her reply memorandum, plaintiff brands as "false" Hartford's assertion that no physician ever stated that the eye problem rendered her unable to work. Pl. Reply at 8. In support of this statement, plaintiff notes that Dr. Sokol speculated that plaintiff's moderately abnormal VEP readings

---

[6] In this connection, plaintiff cites to a comment by Dr. Sammaritano that plaintiff suffered from a "giveaway weakness" in her left leg. Pl. Mem. at 6; see A. 124. To Hartford's knowledge, this is the only place in the administrative record where plaintiff complained about her left leg. On the claim form and attending physician statements submitted in February 2000, both plaintiff and her family doctor, Dr. Dubois-Hall, stated that plaintiff was experiencing problems with her right leg. A. 303, 500.

"could interfere with her ability to carry out the duties and responsibilities of her law practice." Id.

Dr. Sokol's speculation that the eye problem "could interfere" with plaintiff's job is hardly sufficient to conclude that plaintiff is totally disabled. And in any event, there was an abundance of evidence (described in Hartford's opening brief) indicating that plaintiff's vision was excellent and that her reported eye problem was not disabling.[7]

### C. Plaintiff's Reported Cognitive Deficits

In her opening brief plaintiff stated that her reported cognitive deficits "were never at issue." Pl. Mem. at 12. In its opposition brief Hartford demonstrated that, whether or not they were in issue, there was substantial evidence that plaintiff's cognitive complaints were not disabling.

It is still not clear whether plaintiff contends that her reported cognitive deficits were disabling. She does not so contend in her reply brief.

Instead, plaintiff's reply memorandum quotes a snippet from the independent neuropsychological examination report prepared by Drs. Brooks and Cohen, and an even shorter passage from Dr. Sokol's report. Pl. Reply at 8-9. But these excerpts, even when lifted out of their much larger context, obviously do not establish that plaintiff was totally disabled because of cognitive problems. And plaintiff -- once again -- makes no attempt to deal with the substantial

[7] Dr. Sokol himself agreed that, despite plaintiff's moderately abnormal VEP results, plaintiff's visual processing and visual test performance results were in the average to high average range. A. 88. Dr. Hedges stated that the VEP problem did "not have significant visual impairment impact," A. 359, and that plaintiff had "excellent visual acuity of 20/20." A. 384. Dr. Johnson could not find any objective evidence of plaintiff's reported eye problem. A. 358.

body of evidence supporting Hartford's conclusion that plaintiff's reported cognitive symptoms were not disabling.[8]

## VI. Plaintiff Was Not Disabled Because Of A Quantitative Reduction In Her Work Capacity

Plaintiff argues that total disability should be viewed as having both a qualitative and a quantitative component. Pl. Reply at 10. It relies for this argument on a Seventh Circuit case, McFarland v. General American Life Ins. Co., 149 F.3d 583, 588 (7th Cir. 1998), which suggests in dicta that an injury could be considered disabling if its reduces a person's productivity or "output" by 75%. Although plaintiff does not argue that her own productivity was reduced by 75%, she criticizes Hartford on grounds that "it never considered Desrosiers's claim against this quantitative reduction..." Id.

Of course, McFarland's "75%" test is not binding on this Court. Even if it were, there is no evidence to suggest that plaintiff would meet it. The doctors at RIH could find nothing wrong with plaintiff's back or leg. A. 220-21, 223. Dr. Johnson could find nothing wrong with plaintiff at all. A. 358. Dr. Hedges pronounced her vision "quite close to normal." A. 359. Drs. Brooks and Cohen concluded that their tests "do not reflect a pattern of disabling neurocognitive deficits." A. 265. Dr. Sammaritano herself opined that plaintiff's "overall cognitive functioning was in the general normal range," A. 83, and cleared her to return to work on a part-time basis, as did Dr. Dubois-Hall. A. 345.

Indeed, plaintiff's reply memorandum itself nowhere asserts that plaintiff's productivity was reduced by 75% because of her reported ailments. This is not surprising, because the

---

[8] Note that Dr. Sammaritano herself did not consider plaintiff's cognitive issues disabling. A. 83. ("I did feel that her overall cognitive functioning was in the general normal range.").

medical evidence and the sedentary nature of plaintiff's work make it difficult to understand how plaintiff's capacity for work was reduced in <u>any</u> material respect by her reported ailments.

## **Conclusion**

Hartford's decision to deny plaintiff's disability claim was reasoned and supported by substantial evidence. As a consequence, plaintiff's motion for summary judgment should be denied, and Hartford's cross-motion for summary judgment should be granted.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

By Its Attorneys,

Mark A. Pogue (#3441)
EDWARDS ANGELL PALMER & DODGE, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (telecopy)

**Certificate of Service**

I hereby certify that on this 31st day of March, 2006 I served a copy of the within Defendant's Sur-Reply Memorandum In Opposition To Plaintiff's Motion For Summary Judgment And In Support of Its Cross-Motion For Summary Judgment by first class mail, postage prepaid to:

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI 02862

Jordan M. Lewis, Esq.
Siegel, Brill, Greupner, Duffy & Foster, P.A.
400 East Wisconsin Avenue
Suite 333, Floor 3A
Milwaukee, WI 53202